UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHARLES JARVIS and KARON JARVIS,           :

                Plaintiffs,           :

        -against-           :           07 CIV. 8181 (RMB)

VARIAN MEDICAL SYSTEMS, INC.,           :

             Defendant.           :

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION.

Dated: Garden City, New York
      November 6, 2007

                Yours, etc.

                SILBERSTEIN, AWAD & MIKLOS, P.C.

                BY: *Paul N. Nadl*
                        Paul N. Nadler, Esq. (pn 3381)
                Attorneys for plaintiffs
                Charles Jarvis and Karon Jarvis
                Office and P.O. Address
                600 Old Country Road
                Garden City, New York, 11530
                (516) 832-7777

1

# TABLE OF CONTENTS.

**Page**

POINT I.                                                                                         4

"CONTINUOUS TREATMENT" APPLIES AGAINST THE STATE COURT
DEFENDANTS, MONTEFIORE MEDICAL CENTER AND JAMES BUTLER,
M.D., TO TOLL THE STATUTE OF LIMITATIONS THROUGH JULY 12, 2006.
AS SUCH, THE ACTION AGAINST THESE DEFENDANTS WAS TIMELY
WHEN PLAINTIFFS BROUGHT THE INSTANT MOTION TO REMAND ON
OCTOBER 19, 2007.                                                                              4

    A.    THE FACTS SHOW THAT "CONTINUOUS TREATMENT" WAS
           RENDERED THROUGH JULY 12, 2006 BY STATE COURT
           DEFENDANTS MONTEFIORE MEDICAL CENTER AND JAMES
           BUTLER, M.D.                                                              4

    B.    CASELAW SHOWS THAT TREATING AND MONITORING AN
           ABNORMAL CONDITION (I.E., CARCINOMA) CONSTITUTES
           "CONTINUOUS TREATMENT".                                        9

    C.    CASELAW SHOWS THAT THE STATUTE OF LIMITATIONS
           WAS TOLLED AS TO DR. BUTLER (AND THE DEPARTMENT
           OF RADIATION ONCOLOGY) GIVEN THAT ONGOING
           TREATMENT FOR THE SAME CONDITION WAS BEING
           RENDERED BY MONTEFIORE'S DEPARTMENT OF
           ONCOLOGY.                                                              15

    D.    GIVEN THAT THE STATUTE OF LIMITATIONS WAS TOLLED
           THROUGH JULY 12, 2006 FOR MONTEFIORE AND DR.
           BUTLER, THE INSTANT ACTION IS TIMELY AS OF OCTOBER
           19, 2007, THE DATE THE INSTANT MOTION TO REMAND WAS
           MADE.                                                                      16

POINT II.                                                                                        17

IF "RELATION BACK" UNDER RULE 15(C) IS NEEDED, THEN IT SHOULD
APPLY USING THE STATE COURT COMPLAINT AGAINST MONTEFIORE
AND DR. BUTLER AS THE "ORIGINAL PLEADING".                                  17

2

## **TABLE OF CONTENTS.**

**Page**

**POINT III.**                                                                 17

**PLAINTIFFS HAVE MET THEIR POST-REMOVAL BURDEN UNDER 28
U.S.C. §1447.  MOREOVER, VARIAN IS NOT PREJUDICED IN ANY
MANNER BY REMANDING THE ACTION BACK TO STATE COURT.**          17

     A.     THERE IS NO PREJUDICE TO VARIAN.                     19

     B.     THERE IS NO IMPROPER MOTIVE ON PLAINTIFFS' PART.     20


**CONCLUSION.**                                                                20

This Memorandum of Law is submitted in support of the within motion by the plaintiffs. This Memorandum of Law responds to the arguments raised in opposition by defendant Varian Medical Systems, Inc. ("Varian").

Respectfully, as shown below, each of the arguments raised by Varian lack merit.

## POINT I.

**"CONTINUOUS TREATMENT" APPLIES AGAINST THE STATE COURT DEFENDANTS, MONTEFIORE MEDICAL CENTER AND JAMES BUTLER, M.D., TO TOLL THE STATUTE OF LIMITATIONS THROUGH JULY 12, 2006. AS SUCH, THE ACTION AGAINST THESE DEFENDANTS WAS TIMELY WHEN PLAINTIFFS BROUGHT THE INSTANT MOTION TO REMAND ON OCTOBER 19, 2007.**

**A.    THE FACTS SHOW THAT "CONTINUOUS TREATMENT" WAS RENDERED THROUGH JULY 12, 2006 BY STATE COURT DEFENDANTS MONTEFIORE MEDICAL CENTER AND JAMES BUTLER, M.D.**

Initially, the State Court medical malpractice action concerns claims that plaintiff Charles Jarvis was over-radiated during radiation treatment which resulted in blindness and other injuries. (See copies of plaintiffs' Bills of Particulars served in the State Court action, annexed to plaintiffs' moving papers as Exhibit "G").

As plaintiffs asserted in their moving papers, the care and treatment rendered by defendant Montefiore Medical Center ("Montefiore") spanned from June 21, 2004 through July 12, 2006. (See copies of plaintiffs' Bills of Particulars served in the State Court action, annexed to plaintiffs' moving papers as Exhibit "G"). Further, as plaintiffs asserted in their moving papers, "continuous treatment" tolled the statute of limitations as to Montefiore and Dr. Butler through July 12, 2006. (See plaintiffs' attorney's Affidavit at p. "8", paragraph "19").

As shown below, the facts prove as a matter of law that "continuous

4

treatment" was rendered by Montefiore and Dr. Butler for the subject condition (i.e., nasopharyngeal carcinoma) through July 12, 2006.

Mr. Jarvis presented to Montefiore's Department of Oncology for care and treatment of his nasopharyngeal carcinoma. (See copy of June 21, 2004 note from Department of Oncology[1], annexed hereto as part of Exhibit "A"). The doctor at Montefiore's Department of Oncology who was overseeing Mr. Jarvis' cancer care was Avi I. Einzig, M.D. (See copy of Montefiore website printout showing that Dr. Einzig is part of the Department of Oncology, annexed hereto as Exhibit "B"). (See also copy of Montefiore website printout showing that Montefiore is located at 1695 Eastchester Road[2], which is the address printed on some of the Department of Oncology records, annexed hereto as Exhibit "C").

From the June 21, 2004 note, a cancer treatment plan was devised wherein Mr. Jarvis would initially undergo radiation therapy ("RT") and chemotherapy ("cisplatin/SFU"), followed by further chemotherapy. (See June 21, 2004 note, Exhibit "A").

The Department of Oncology was overseeing the cancer treatment and monitoring Mr. Jarvis' medical health as he underwent the radiation therapy and chemotherapy. (See Department of Oncology records showing ongoing monitoring through June 12, 2006, Exhibit "A"). The Department of Oncology referred Mr. Jarvis to the Department of Radiation Oncology (i.e., Dr. Butler) to undergo the radiation therapy.

---

[1]

Montefiore's Department of Oncology records are annexed hereto as Exhibit "A". These records are arranged as provided to our office by Montefiore, with the most recent notes on top and proceeding chronologically back in time.

[2]

Montefiore also has facilities at other locations.

(See July 9, 2004 note showing that Mr. Jarvis was referred to Dr. Butler for "RT", Exhibit "A"). (See also Department of Radiation Oncology letter by Dr. Butler, dated June 22, 2004, showing that Mr. Jarvis was referred for treatment, annexed hereto as part of Exhibit "D").

Dr. Butler devised a radiation therapy treatment plan, which according to the letter dated June 22, 2004, spanned from July 15, 2004 through September 9, 2004. (See Department of Radiation Oncology letter, annexed hereto as part of Exhibit "D"). (See also Department of Radiation Oncology notes showing that Dr. Butler "approved" therapy on July 7, 2004, and that the radiation therapy was given through September 9, 2004, annexed hereto as Exhibits "E" and "F", respectively). The Department of Radiation Oncology monitored Mr. Jarvis concerning the radiation therapy through (and after) October 25, 2004, as evidenced by a Department of Radiation Oncology letter by Dr. Butler dated October 25, 2004. (See Department of Radiation Oncology letter, annexed hereto as part of Exhibit "D").

The Department of Oncology (Dr. Einzig) was continuously overseeing and monitoring Mr. Jarvis' cancer care. For example, the Department of Oncology saw Mr. Jarvis on:

● July 9, 2004, and noted that radiation therapy and chemotherapy was to begin. (See July 9, 2004 note, Exhibit "A").

● July 22, 2004, and noted that radiation therapy was to continue. (See July 22, 2004 note, Exhibit "A").

● July 26, 2004, and noted that radiation therapy was to continue. (See July 26, 2004 note, Exhibit "A").

● July 27-29, 2004, and noted that radiation therapy was to continue. (See July 27-29, 2004 notes, Exhibit "A").

6

• August 3, 2004, and noted radiation therapy and chemotherapy, as well as dehydration. (See August 3, 2004 note, Exhibit "A").

• October 18, 2004, and noted that "2 courses" of chemotherapy ("cisplatin") and radiation therapy were completed. Further chemotherapy could not resume until Mr. Jarvis "regained his strength". (See October 18, 2004 note, Exhibit "A").

• October 25, 2004, and noted that chemotherapy and radiation therapy done, but that Mr. Jarvis could not receive further chemotherapy until he regained strength, etc. (See October 25, 2004 note, Exhibit "A").

• November 1, 2004, and noted that "clinically improved", but that needed to "decide when it is possible to receive chemotherapy". (See November 1, 2004 note, Exhibit "A").

• November 8 and 15, 2004, and noted that the situation was discussed with another doctor ("Dr. Berkowitz) about when chemotherapy could be resumed (See November 8 and 15, 2004 notes, Exhibit "A").

• November 22, 2004, and noted that Mr. Jarvis could resume chemotherapy. Dosage of chemotherapy prescribed. (See November 22, 2004 note, Exhibit "A").

• December 6, 2004, December 13, 2004, December 20, 2004, January 10, 2005, January 11, 2005, January 19, 2005, and noted chemotherapy treatment and side effects of the treatment, and whether Mr. Jarvis could undergo further chemotherapy. (See December 6, 2004, December 13, 2004, December 20, 2004, January 10, 2005, January 11, 2005, January 19, 2005 notes, Exhibit "A").

• January 21, 2005, and noted that Mr. Jarvis had renal dysfunction secondary to the chemotherapy ("cisplatin"). (See January 21, 2005 note,

7

Exhibit "A").

• January 25, 2005, and noted that Mr. Jarvis had renal dysfunction which was to be monitored, with follow-up visit scheduled. Further chemotherapy was not recommended. (See January 25, 2005 note, Exhibit "A").

• February 1, 2005, and noted that Mr. Jarvis' renal dysfunction (elevated creatinine) was due to chemotherapy ("cisplatin") and diabetes. Mr. Jarvis was being monitored. Follow-up visit scheduled. (See February 1, 2005 note, Exhibit "A").

• February 15, 2005, and noted that Mr. Jarvis had renal and bladder symptomatology. Mr. Jarvis was being monitored. Follow-up visit scheduled. (See February 15, 2005 note, Exhibit "A").

• February 28, 2005, and noted that Mr. Jarvis had decreased hearing, bladder symptomatology, and renal dysfunction. Mr. Jarvis was being monitored. Follow-up visit scheduled. (See February 28, 2005 note, Exhibit "A").

• March 15, 2005, and noted that Mr. Jarvis had chronic renal dysfunction and anemia. Mr. Jarvis was being monitored. Follow-up visit scheduled. (See March 15, 2005 note, Exhibit "A").

• April 4, 2005, and noted that the renal dysfunction which was present developed after chemotherapy. Anemia noted. Mr. Jarvis was being monitored. Follow-up visit scheduled. (See April 4, 2005 note, Exhibit "A").

• April 18, 2005, April 26, 2005, May 12, 2005, May 26, 2005, July 6, 2005, August 10, 2005, September 1, 2005, October 11, 2005, November 1, 2005, November 22, 2005, December 14, 2005, January 10, 2006, February 1, 2006, February 27, 2006, March 28, 2006, May 4, 2006, June 5, 2006, and July 12, 2006, and noted assorted ongoing symptomatology related to the chemotherapy and radiation

8

therapy which Mr. Jarvis was being monitored for by the Department of Oncology. Follow-up visits were continuously scheduled at each visit and took place. (See April 18, 2005, April 26, 2005, May 12, 2005, May 26, 2005, July 6, 2005, August 10, 2005, September 1, 2005, October 11, 2005, November 1, 2005, November 22, 2005, December 14, 2005, January 10, 2006, February 1, 2006, February 27, 2006, March 28, 2006, May 4, 2006, June 5, 2006, and July 12, 2006 notes, Exhibit "A").

(See Department of Oncology records, Exhibit "A").

    The Department of Oncology (Dr. Einzig) was continuously overseeing and monitoring Mr. Jarvis' cancer care from June 21, 2004 through July 12, 2006. During this period, referrals were made to the Department of Radiation Oncology (Dr. Butler) along with other departments at Montefiore (e.g., gastroenterology, medicine, etc.). The condition which was being treated and monitored by the Department of Oncology was nasopharyngeal carcinoma. (See Department of Radiation Oncology letter, dated June 22, 2004, which characterized the carcinoma as "T2N3 nasopharyngeal carcinoma", Exhibit "D").

### B. CASELAW SHOWS THAT TREATING AND MONITORING AN ABNORMAL CONDITION (I.E., CARCINOMA) CONSTITUTES "CONTINUOUS TREATMENT".

    Montefiore should be held liable for the care and treatment rendered at its Department of Oncology for Mr. Jarvis' nasopharyngeal carcinoma, which spanned from June 21, 2004 through July 12, 2006. Montefiore should also be held liable for the care and treatment rendered at its Department of Radiation Oncology (i.e., where the radiation therapy took place), which spanned from June 22, 2004 through October 25,

2004 (and after). (See Dr. Butler letters, Exhibit "D").

Montefiore considers its "departments" as part of itself. (See e.g., letter from Montefiore's counsel stating that the "Center for Radiation Oncology" is actually a Department within Montefiore, and that no separate answer would be served, annexed to plaintiffs' moving papers as Exhibit "F").

The situation at bar involves one "department" within Montefiore (i.e., Department of Oncology) managing and overseeing Mr. Jarvis' cancer care, and devising a treatment plan involving referral to another department within Montefiore (i.e., Department of Radiation Oncology) for specific treatment. This "department" (i.e., Department of Oncology) also monitors Mr. Jarvis' status for symptomatology related to the radiation therapy and chemotherapy, and refers him to other "departments" within Montefiore (e.g., gastroenterology) to treat the symptomatology.

This situation is akin to that in Turcios v. Nassau County Med. Ctr., 173 Misc.2d 646, 661 N.Y.S.2d 491 (Sup. Ct., Nassau Cty. 1997). In Turcios, a plaintiff was being treated at various clinic(s) of Nassau County Medical Center (hereinafter "Center"), with one clinic referring the plaintiff to other clinic(s) within the Center. The Court deemed that the plaintiff went to one "provider", i.e., the Center. The Court also deemed that the doctors working at the Center were not merely "affiliated" there, but were its "employees". The Court held that the "continuous treatment" doctrine was applicable to the Center for malpractice committed by acts of its doctors and staff.

The "continuous treatment" doctrine should apply here concerning departments and facilities within the same hospital. The State Court Appellate Division, Second Department has held the doctrine to apply where treatment is rendered by two New York City Health and Hospitals Corporation facilities. "[T]he doctrine of continuous treatment may be applied to toll the 90-day period 'where a plaintiff patient is

10

successively treated for the same or related illnesses or injuries by different municipal medical facilities under the aegis of the New York City Health and Hospitals Corporation". (Kropiewnicki v. City of New York, 29 AD3d 532, 814 N.Y.S.2d 704 (2nd Dept. 2006)).

Here, the Department of Oncology referred Mr. Jarvis to the Department of Radiation Oncology. The care rendered by the Department of Radiation Oncology was "clearly contemplated by [the Department of Oncology] as a necessary part of [its] oversight of the patient's progress". (DiFilippi v. Huntington Hosp., 203, AD2d 321, 610 N.Y.S.2d 552 (2nd Dept. 1994)). (See also Kropiewnicki, supra, 29 AD3d 532, 814 N.Y.S.2d 704).

Here, the abnormal condition being actively treated and monitored through July 12, 2006 was nasopharyngeal carcinoma ("T2N3 nasopharyngeal carcinoma"). This case is akin to the line of cases where a plaintiff is being treated and monitored for an abnormal condition. For example, in Melup v. Morrissey, 3 AD3d 391, 771 N.Y.S.2d 8 (1st Dept. 2004), the plaintiff was a "high risk" for colon cancer, and was being monitored via, *inter alia*, colonoscopy. The Court held:

> The colonoscopy was a 'treatment' within the meaning of the statute – a regularly scheduled visit and part of [the doctor's] monitoring of the decedent, a patient at high risk for colon cancer, during which [the doctor] excised two small polyps from her colon.

In Kurland v. McElwein, 231 AD2d 685, 647 N.Y.S.2d 542 (2nd Dept. 1996), the plaintiff had an abnormal condition wherein he was susceptible to recurrence of colon polyps. Annual proctological examinations were done to check for recurrence of the polyps. Subsequently, a second polyp was detected and biopsied, and found to be malignant. The Court held:

> The defendant's examinations of the plaintiff prior to the detection

11

of the second polyp were not 'routine diagnostic examinations' but were specifically prescribed as part of the plaintiff's ongoing care for his existing condition, which rendered him highly susceptible to future polyp growths. This case is distinguishable from those cases in which periodic examinations involve routine medical examinations that do not target a specific preexisting medical condition and those in which sporadic medical treatments are rendered for various discrete conditions.

In <u>Traphagen v. Robert Packer Hosp.</u>, 270 AD2d 777, 704 N.Y.S.2d 374 (3rd Dept. 2000), the plaintiff underwent mastectomy for cancer of right breast. Thereafter, the plaintiff was monitored by a medical group for "possibillity of cancer in ... left breast and/or the spread of cancer". According to the Court, the "original condition" being monitored was "suspicion of cancer" in the plaintiff's left breast. Further, according to the Court, "regular return visits" scheduled by the medical group to monitor that "condition" constituted "continuing treatment", and thereby tolled the statute of limitations.

In <u>Oksman v. City of New York</u>, 271 AD2d 213, 705 N.Y.S.2d 360 (1st Dept. 2000), the plaintiff was being monitored for a "density" in her left breast. The Court held that, "an agreement between physician and patient to continue observation of suspicious breast tissue may constitute sufficient monitoring to support a finding of continuous treatment".

In <u>Reiter v. Sartori</u>, 2 AD3d 1412, 769 N.Y.S.2d 686 (4th Dept. 2003), the plaintiff underwent mastectomy for cancer of her left breast on January 13, 1998. Thereafter, the plaintiff was monitored for cancer in the right breast. The Court held:

> 'The monitoring of an abnormality to ascertain the presence ... of a disease or condition may constitute treatment for purposes of tolling' the statute of limitations. [citations omitted]. Here, plaintiffs established that, in examining plaintiff subsequent to January 13, 1998, [defendant] was monitoring the condition that gave rise to this lawsuit, i.e., a bilateral infiltrating carcinoma that originated in plaintiff's right breast, and thus the statute of limitations was tolled

12

[citation omitted].

In <u>Porubic v. Oberlander</u>, 274 AD2d 316, 710 N.Y.S.2d 574 (1st Dept. 2000), the plaintiff was being monitored for cervical cancer. The Court held, "we cannot say that plaintiff and defendant did not 'reasonably intend the plaintiff's uninterrupted reliance upon the defendant's observation, directions, concern, and responsibility for overseeing the patient's progress'"[3]. (The Court denied defendant's motion for summary judgment on "continuous treatment" issue).

Further cases involving treatment and monitoring for an abnormal condition: <u>Prinz-Schwartz v. Levitan</u>, 17 AD3d 175, 796 N.Y.S.2d 36 (1st Dept. 2005)(plaintiff being monitored for "fibrocystic" breast condition); <u>Dolce v. Powalski</u>, 13 AD3d 1200, 787 N.Y.S.2d 595 (4th Dept. 2004)(plaintiff being monitored for mouth "lesion"); <u>Mandel v. Herrmann</u>, 271 AD2d 661, 706 N.Y.S.2d 195 (2nd Dept. 2000)(plaintiff being monitored for "lung condition"); <u>Orsini v. Patel</u>, 264 AD2d 339, 694 N.Y.S.2d 50 (1st Dept. 1999)(plaintiff being monitored for recurrence of melanoma); <u>Patterson v. Minehan</u>, 180 AD2d 241, 584 N.Y.S.2d 929 (3rd Dept. 1992)(plaintiff being monitored for recurrence of pancreatic cancer).

Respectfully, it would have been "absurd" to compel Mr. Jarvis to sue Montefiore and stop her "continuous treatment" for the abnormal condition (i.e., nasopharyngeal carcinoma). (<u>See</u> e.g., <u>Allende v. New York City Health and Hosps. Corp.</u>, 90 N.Y.2d 333, 660 N.Y.S.2d 695, 683 NE2d 317 (1997)). As stated in <u>Rudolph v. Jerry Lynn, D.D.S., P.C.</u>, 16 AD3d 261, 792 N.Y.S.2d 410 (1st Dept. 2005), the "['continuous treatment'] doctrine rests upon the belief that the best interests of a

---

[3]

All internal brackets from original have been omitted.

patient warrant continued treatment with an existing provider, rather than stopping

treatment, as 'the [existing provider] not only is in a position to identify and correct his or

her malpractice, but is best placed to do so'".

> As recited by the State Court Appellate Division, First Department:

>> [W]here the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concerns and responsibility for overseeing the patient's progress, the requirement for continuous care and treatment for the purpose of the Statute of Limitations is certainly satisfied.

(Hein v. Cornwall Hosp., 302 AD2d 170, 753 N.Y.S.2d 71 (1st Dept. 2003)).

> Further, as the Court in Hein, supra, recited:

>> This Court has repeatedly ruled that the failure to make the correct diagnosis as to the underlying condition while continuing to treat the symptoms does not mean, for purposes of continuity, that there has not been treatment.

(Hein, 302 AD2d 170, 753 N.Y.S.2d 71).

Varian seems to be claiming that since Montefiore and Dr. Butler and

Montefiore were not treating Mr. Jarvis for over-radiation, there can be no "continuous

treatment". (See Varian papers at p. "6"). This lacks merit, since Mr. Jarvis was clearly

undergoing "continuous treatment" by Montefiore and Dr. Butler for the nasopharyngeal

carcinoma) from June 21, 2004 through July 12, 2006. The fact that neither Montefiore

nor Dr. Butler diagnosed the over-radiation is irrelevant. (See e.g., Hein, supra). (See

also Davidson v. O'Brien, 21 AD3d 1330, 801 N.Y.S.2d 861 (4th Dept. 2005); Karp v.

Swerdlow, 17 AD3d 267, 793 N.Y.S.2d 404 (1st Dept. 2005); Melup, supra, 3 AD3d 391,

771 N.Y.S.2d 8).

Varian's cited caselaw is also inapposite to the situation at bar, since such

caselaw did not involve a known abnormal condition (e.g., cancer) which was actively

being treated and monitored.  The situation at bar did not involve "well care" or "well care visits".

There is no evidence that Montefiore ever terminated the physician-patient relationship from June 21, 2004 through July 12, 2006.  Montefiore's Department of Oncology "considered [itself] to be actively involved in [Mr. Jarvis'] care", and there is no evidence that Mr. Jarvis sought to "abandon" his care and treatment with these providers. (Aulita v. Chang, -AD3d-, -N.Y.S.2d-, 2007 WL 3101824 (3rd Dept. 2007)).

Mr. Jarvis could reasonably believe that Montefiore was providing the medical services at its various departments and facilities.  Under the analysis in Hill v. St. Clare's Hosp., 67 N.Y.2d 72, 499 N.Y.S.2d 904, 490 NE2d 823 (1986), Watkins v. Fromm, 108 AD2d 233, 488 N.Y.S.2d 768 (2nd Dept. 1985), and Perez v. Mra, 11 Misc.3d 1062, 816 N.Y.S.2d 700 (Sup. Ct., Bronx Cty. 2006), the "continuous treatment" doctrine should be deemed to apply to Montefiore.

### C.    CASELAW SHOWS THAT THE STATUTE OF LIMITATIONS WAS TOLLED AS TO DR. BUTLER (AND THE DEPARTMENT OF RADIATION ONCOLOGY) GIVEN THAT ONGOING TREATMENT FOR THE SAME CONDITION WAS BEING RENDERED BY MONTEFIORE'S DEPARTMENT OF ONCOLOGY.

There was a clear nexus between Montefiore and its Department of Oncology, and between Montefiore and Dr. Butler (i.e., the Department of Radiation Oncology)[4].  Given this, "continuous treatment" by Montefiore through its Department of Oncology for the cancer should toll the statute of limitations as to the treatment by Dr.

---

[4]  Dr. Butler was an "Assistant Professor" and "Residency Program Director" in the Department of Radiation Oncology. (See Dr. Butler letter dated June 22, 2004, Exhibit "D").

Butler (i.e., by the Department of Radiation Oncology) for the same condition. (See e.g., Cardenales v. Queens-Long Island Med. Grp., P.C., 18 AD3d 689, 795 N.Y.S.2d 736 (2nd Dept. 2005); Lawyer v. Albany Med. Ctr. Hosp., Inc., 246 AD2d 800, 668 N.Y.S.2d 244 (3rd Dept. 1998); Stilloe v. Contini, 190 AD2d 419, 599 N.Y.S.2d 194 (3rd Dept. 1993); Watkins, supra, 108 AD2d 233, 488 N.Y.S.2d 768).

**D.    GIVEN THAT THE STATUTE OF LIMITATIONS WAS TOLLED THROUGH JULY 12, 2006 FOR MONTEFIORE AND DR. BUTLER, THE INSTANT ACTION IS TIMELY AS OF OCTOBER 19, 2007, THE DATE THE INSTANT MOTION TO REMAND WAS MADE.**

Concerning "continuous treatment", Varian does not dispute that plaintiffs commenced the State Court action on March 7, 2007. (See copy of receipt confirming commencement, annexed hereto as part of Exhibit "G"). Nor does Varian dispute that the instant motion was made within 30 days of removal, i.e., on October 19, 2007.

Under CPLR §214-a, the applicable statute of limitations is 2½ years. (See e.g., Deltoro v. Arya, 305 AD2d 628, 760 N.Y.S.2d 201 (2nd Dept. 2003) (malpractice occurred on April 6, 1999, and under CPLR §214-a, action needed to be commenced by October 6, 2001)). Since the statute of limitations was tolled through July 12, 2006, the action should be timely as of the date of the making of the instant motion to remand to State Court.

For the action to be timely against Montefiore or Dr. Butler when the instant motion to remand was made (on October 19, 2007), "continuous treatment" would need to occur through April 19, 2005. As shown above, "continuous treatment" occurred through July 12, 2006, and as such the action is timely against Montefiore and Dr. Butler.

16

### POINT II.

### IF "RELATION BACK" UNDER RULE 15(C) IS NEEDED, THEN IT SHOULD APPLY USING THE STATE COURT COMPLAINT AGAINST MONTEFIORE AND DR. BUTLER AS THE "ORIGINAL PLEADING".

Plaintiffs have shown above that rule 15(c) is not needed, since plaintiffs' action against Montefiore and Dr. Butler is timely as of the making of the instant motion to remand (on October 19, 2007). (Even if the Court deems that tolling through July 12, 2006 applies only to Montefiore, then such should destroy diversity and warrant remand). Since rule 15(c) is not needed, the situation at bar is identical to that in Jedaszak v. Intromedix, Inc., 2004 WL 1497559 (S.D.N.Y. 2004).

Plaintiffs assert that the caselaw cited in Clancy v. Zimmer, Inc., 2007 WL 969237 (W.D.N.Y. 2007) supports using a prior State Court pleading as the "original pleading" for "relation back" purposes under rule 15(c). Plaintiffs do acknowledge contrary caselaw as cited by Varian, but plaintiffs assert that Clancy, supra, involves a situation identical to the one at bar, wherein the "relation back" was used solely as a vehicle to enable a case to be remanded back to State Court. (Clancy cites two cases from this district in support of its position, as well as one from the Eastern District of New York). In any event, allowing use of rule 15(c) in the situation at bar, as done in Clancy, seems the more enlightened position.

### POINT III.

### PLAINTIFFS HAVE MET THEIR POST-REMOVAL BURDEN UNDER 28 U.S.C. §1447. MOREOVER, VARIAN IS NOT PREJUDICED IN ANY MANNER BY REMANDING THE ACTION BACK TO STATE COURT.

Respectfully, as plaintiffs showed in their moving papers, a timely action was brought against Varian on August 20, 2007. (See copy of receipt showing timely

17

commencement, annexed hereto as part of Exhibit "G").  Thereafter, Montefiore timely

notified our office that there was another entity which maintained the machine (i.e.,

Radiation Therapy)[5], and plaintiffs commenced a separate timely action against

Radiation Therapy on August 27, 2007. (See copy of receipt showing timely

commencement, annexed hereto as part of Exhibit "G").

Respectfully, while motion practice ensued, our office and counsel for

Montefiore did work together in the State Court action so that plaintiffs were able to

commence timely actions against Varian and Radiation Therapy.  What Varian does not

mention is that plaintiffs would have named both Varian and Radiation Therapy in the

same action, which would have destroyed diversity.

There was no excessive delay by our office which should warrant denial of

the instant motion. (See e.g., Clancy, supra,  2007 WL 969237; Jedaszak, supra, 2004

WL 1497559).  From June of 2006 onward, our office sought to know the identities of all

entities involved in the manufacture, maintenance, etc., of the subject radiation

machine.  Timely motion practice ensued in State Court for this information, wherein

our office and counsel for Montefiore worked together so that timely actions were

commenced against Varian and Radiation therapy.

Plaintiffs also note that once a timely action was commenced against

Varian, there was a timely motion to remove the action to this Court, and then a timely

motion to remand the action back to State Court.  There was no excessive delay which

should warrant denial of the motion.

Moreover, as stated in plaintiffs' moving papers, plaintiffs intended on

---

[5]
See copy of subsequent letter from Montefiore, annexed to plaintiffs' moving papers
as Exhibit "J".

18

consolidating in State Court the instant action with the State Court medical malpractice action and with the State Court action against Radiation Therapy.  Consolidation could not take place once Varian removed the action.  Further delaying consolidation was waiting for Radiation Therapy to serve an Answer.  Such should constitute an "adequate explanation" for the delay and for plaintiffs' motivation for the relief sought.  (Clancy, supra, 2007 WL 969237).

## A.    THERE IS NO PREJUDICE TO VARIAN.

There is no prejudice to Varian.  The litigation involving Montefiore and Dr. Butler is not so complicated that Varian's rights will be in any way prejudiced.  Courts consolidate interwoven medical malpractice and products liability actions. (See e.g., Clancy, supra, 2007 WL 969237; Jedaszak, supra, 2004 WL 1497559).  Here, the claims in the actions are interwoven (i.e., radiation machine malfunction in a case where medical malpractice claims of over-radiation are involved).  Respectfully, Varian can readily protects its rights in a consolidated action in State Court.

Further, in the State Court medical malpractice action, no Court Conferences (e.g., no Preliminary Conference) and no depositions have been held.  A Preliminary Conference had been scheduled for October 12, 2007, but our office requested that the Conference be adjourned given the removal of the instant case to Federal Court and the possibility of seeking to consolidate the actions. (At present, the Preliminary Conference is scheduled for December 4, 2007, but our office will seek to adjourn it pending determination of the instant motion).

Our office is providing Varian with pleadings and documents from the State Court medical malpractice action, along with authorizations for records, etc.  In actuality, the entity which possesses relevant information concerning purchase and

maintenance of the subject radiation machine is Montefiore, and Varian is not prejudiced in obtaining such discovery from Montefiore.

### B.    THERE IS NO IMPROPER MOTIVE ON PLAINTIFFS' PART.

There is no improper motive on plaintiffs' part.  Contrary to unsupported claims by Varian, plaintiffs always sought to litigate the instant action in State Court, Bronx County.  For example, had plaintiffs known of Radiation Therapy's role when it commenced the instant action against Varian, such action would have named both Varian and the New York corporation Radiation Therapy (i.e., thus destroying diversity).

There is no forum shopping here.  Plaintiffs seek to remand the instant action back to the venue where a State Court medical malpractice action is pending, as well as where a State Court action against Radiation Therapy is pending.  Plaintiffs seek to consolidate these actions.

### CONCLUSION.

For the foregoing reasons, plaintiffs' instant motion should be granted in its entirety, and such other relief as deemed equitable and proper should be granted.

Dated: Garden City, New York
      November 6, 2007

Yours, etc.

SILBERSTEIN, AWAD & MIKLOS, P.C.

BY:_____*Paul N. Nadler*_____
        Paul N. Nadler, Esq. (pn 3381)

20

Attorneys for plaintiffs
Charles Jarvis and Karon Jarvis
Office and P.O. Address
600 Old Country Road
Garden City, New York, 11530
(516) 832-7777